[Civ. No. 3004. Third Appellate District.—March 13, 1926.]

## CHARLES A. BLACK, Respondent, v. W. O. BLACK, Appellant.

[1] LANDLORD AND TENANT—LEASE FOR DETERMINATE TERM—HOLDING OVER—TRESPASS—NOTICE—REMEDIES OF LANDLORD.—If by an agreement of lease an estate for a determinate term is created, a holding over the term by the tenant amounts to a trespass, and the landlord, without first giving the tenant written notice to quit the premises, is authorized to take possession, or, in case the tenant refuses to deliver possession, proceed with an action of unlawful detainer or in any other authorized way, for restitution or possession of the premises.

[2] ID.—TENANCY FROM YEAR TO YEAR—HOLDING OVER—NOTICE.—If a tenancy is from year to year, and the tenant holds over after the termination of the tenancy, in order to terminate the tenancy, notice to vacate as prescribed by law must be given the tenant as a prerequisite to the maintenance of an action to secure possession.

[3] ID.—LEASES—STATUTE OF FRAUDS.—An agreement not in writing for the leasing of real property for a period longer than one year is invalid.

[4] ID.—HOLDING OVER—ACCEPTANCE OF RENT—PRESUMPTION—SECTION 1945, CIVIL CODE.—The presumption declared by section 1945 of the Civil Code that "if a lessee of real property remains in possession thereof after the expiration of the hiring, and the lessor accepts rent from him, the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding one month when the rent is payable monthly, nor in any case one year," is a disputable presumption, the force of which is subject to be overcome by other evidence.

---

1. See 15 Cal. Jur. 819; 16 R. C. L. 1160.
3. See 12 Cal. Jur. 897; 25 R. C. L. 562.
4. See 15 Cal. Jur. 821.

[5] ID.—IMPLICATION OF NEW TERM—EVIDENCE.—The implication of
a new term created by the payment of rent after the expiration
of the first term is an implication of fact merely; it is evidence
from which an agreement for a new or further term may be
inferred or presumed; and if it be shown that, in point of fact,
a new agreement was made, such new agreement would destroy
the implication of a different term which might otherwise be
presumed from the subsequent payment of rent.

[6] ID.—UNLAWFUL DETAINER—YEARLY LEASE—CONFLICT IN EVIDENCE
—DUTY OF TRIAL COURT.—In this action in unlawful detainer, the
evidence was sufficient to show that the lease to defendant of the
premises covered thereby was for a definite and limited term of
one year; and the testimony of the defendant at variance with
that of plaintiff merely created a conflict in the evidence which
it was solely the duty of the trial court to resolve and settle.

---

(1) 35 C. J., p. 1047, n. 95.    (2) 35 C. J., p. 1110, n. 98.    (3) 27
C. J., p. 210, n. 22.    (4) 35 C. J., p. 1028, n. 47, p. 1031, n. 70, 75,
p. 1033, n. 87.    (5) 35 C. J., p. 1032, n. 79, p. 1104, n. 20, 21, 22.
(6) 4 C. J., p. 843, n. 65; 22 C. J., p. 635, n. 40; 35 C. J., p. 969,
n. 56.

APPEAL from a judgment of the Superior Court of
Sonoma County. R. L. Thompson, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. F. Cowan and A. W. Hollingsworth for Appellant.

Barrett & McConnell for Respondent.

HART, J.—This is an action in unlawful detainer. The
plaintiff was, prior to and at the time of the commencement
of this action, the owner of a certain tract of improved land
in Sonoma County, which is described in the complaint by
metes and bounds, and which has been and was, down to
the time of the filing of the complaint herein, devoted to
farming, horticultural, and viticultural uses and purposes.
The complaint alleges that, on or about the first day of
November, 1923, the plaintiff, by an oral lease made on said
day, leased to the defendant the said land, together with
certain farming tools and implements, for the term of one
year beginning November 1, 1923, and ending October 31,

---

5.  See 15 Cal. Jur. 821; 16 R. C. L. 1161.

1924, upon an agreement upon the part of defendant that he would, at his own expense, prune, plow, cultivate, "and carefully tend the said farm and the orchards and crops thereon in a good and farmerlike manner for the said term, and harvest said crops and deliver the same at the place of market, and which said crops were to be sold by and in the name of the plaintiff herein, and the gross proceeds were to be equally divided between plaintiff and defendant." It is further likewise alleged that defendant, by virtue of the provisions of said agreement of lease, entered into and took possession of said farm, and continued to possess and occupy the same during said term; that, ever since the termination of said lease on the thirty-first day of October, 1924, the defendant, contrary to the terms of said agreement of lease, has wrongfully continued in the possession of the said land or farm in person, after the expiration of the term for which it was let to him, and without the permission of plaintiff; that, on or about the first day of July, 1924, "and thereafter repeatedly, and at various times before the expiration of the term of said lease" on the thirty-first day of October, 1924, plaintiff expressly notified defendant that he (plaintiff) would not renew said lease and demanded and requested him (defendant) to vacate and surrender the said premises upon the expiration of said term, and that the said defendant refused and still refuses to vacate the said farm and premises and property or to deliver the same to plaintiff, and has ever since the termination of said lease withheld and still withholds the possession thereof from the plaintiff, to his damage in the sum of five hundred dollars.

The prayer is for a restitution of the premises to plaintiff and for damages for the alleged wrongful withholding of the same in the sum above named.

A demurrer to the complaint on both general and special grounds was interposed by defendant and by the court overruled. Thereupon the defendant answered, admitting plaintiff's ownership of the land or farm described in the complaint, but specifically denying all the other material averments thereof.

The cause was tried by the court without the aid of a jury, and findings and judgment were for the plaintiff for the restitution of the premises, and costs.

The defendant appeals from said judgment upon a bill of exceptions.

The general contention urged by the defendant on this appeal is that the findings do not derive support from the evidence. This contention, however, involves and submits to us for solution this question: Whether the lease to defendant of the premises was, according to the evidence, or the testimony of plaintiff himself, for a definite and limited term of one year, or only from year to year, which, as the cases sometimes characterize such an estate, is a "periodic tenancy." [1] The importance of the question thus propounded is thus to be explained: That, if by the agreement of lease, an estate for years was created—that is to say, a lease for a determinate term, as for a year—then, in that case, the holding over the term fixed or agreed upon by the tenant would amount to a trespass, and the landlord, without first giving the tenant written notice to quit the premises, would be authorized to take possession, or, in case the tenant refused to deliver up possession, proceed in and maintain an action of unlawful detainer or proceed in any other authorized way, for restitution or possession of the premises. [2] On the other hand, if the tenancy was from year to year, and the tenant held over after the termination of the tenancy as fixed by the lease, then, in order to terminate the tenancy, notice to vacate as prescribed by law (see sec. 789, Civ. Code, and sec. 1162, Code Civ. Proc.) must be given the tenant as a prerequisite to the maintenance by the landlord of an action to secure possession, which notice, it is conceded, was not given to nor served on defendant. Certain other rules relating to the leasing of real property may as well be stated at this point, viz.: [3] 1. That an agreement not in writing for the leasing of real property for a period longer than one year is invalid (Civ. Code, sec. 1624, subd. 5). [4] 2. That "if a lessee of real property remains in possession thereof after the expiration of the hiring, and the lessor accepts rent from him, the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding one month when the rent is payable monthly, nor in any case one year." (Civ. Code, sec. 1945.) But this is a disputable presumption, the force of which is subject to be overcome by other evidence. [5] "The implication of

a new term created by the payment of rent after the expiration of the first term is an implication of fact merely. It is evidence from which an agreement for a new or further term may be inferred or presumed. If it be shown that, in point of fact, a new agreement was made, such new agreement would, of course, destroy the implication of a different term which might otherwise be presumed from the subsequent payment of rent." (*Skaggs* v. *Elkus*, 45 Cal. 156, 160; see, also, *Rogers* v. *Duhart*, 97 Cal. 500, 506 [32 Pac. 570]; 16 R. C. L. 1161.) Or, as the rule is stated in 35 C. J. 1104: "Where the holding over is in conformity with a new and express agreement, a tenancy from year to year inconsistent with such agreement will not arise, as, for example, . . . , where the tenant holds under express successive renewals of the lease for definite terms of a year, he is tenant for years and not from year to year."

[6] As to the evidence, it appears that the plaintiff, who is the father of the defendant, first let the latter have possession of the premises described in the complaint in the year 1916, upon an agreement and understanding that they were to divide between them in equal parts or shares the crops raised on the farm during said year; that, after the crops for the year 1916 were gathered, the defendant departed from the premises, but, in the year 1917, returned and proposed to plaintiff a lease of the property upon the same terms as those upon which he worked the farm in the previous year. The proposition was assented to by plaintiff. The proposition of a written lease was discussed between them, but it was finally decided that defendant would take a verbal lease. The defendant thereupon entered into the possession of the premises under said lease at some time between the 1st and 10th of April, 1917. At the end of the year in 1918, so plaintiff testified, a new oral agreement of lease was entered into between the parties. By said agreement, the plaintiff leased the premises to the defendant for the term of one year, beginning with the 1st of November, 1918, upon the same terms as those upon which defendant held possession under the previous lease. The defendant continued in the possession of the property down to the date of the commencement of this action.

The plaintiff testified that the leases during the period from and including the year 1917 to and including the

"lease" year ending on the 30th of October, 1924, were made each year "from year to year." Thus he testified: "Q. When did Oscar first go on the place? A. 1916—some time in February. Q. And then, after that, did you and he have any agreement with reference to the year 1917? A. We had. Q. When was that agreement made? A. Between the 1st and 10th of April, 1917. Q. Now, what was that agreement? A. Oscar was to take the property and lease the property, take good care of it, harvest the crops, deliver them, and pay all the expenses of the ranch and give me half. Q. Was anything said as to how long that was to run? A. That was just from year to year. Q. The first time you said this was done was in April, 1917? A. That would be from the 1st of April to November 1st of the same year. Q. What was your arrangement, if any, between you from November 1st on thereafter? . . . A. Same agreement. Q. November 1st, 1917? A. Yes. Q. From year to year you say? A. From year to year. Q. For how long? A. From November 1st each year. Q. Down to what time; down to the present time? A. Down to the present time. Q. That is down to last year, 1924? A. Yes. Q. What was your arrangement, if any, with Oscar for the year 1924 beginning November 1st, 1923? A. Just the same as the others. The Court: Q. Did you have a conversation in 1923 about the renewal of the lease? A. In '23—that would be from '23 to '24? Q. That would be a year ago last November. A. Yes, they are all identical, the same all the way through for each year. I had several talks with Oscar between November 1st, 1923, and November 1st, 1924, about renewing the lease from 1925. In July of 1924 I told him I would not renew the lease."

On cross-examination, plaintiff testified: "Q. Did you say anything to him about the terms on which he was working in 1916? A. Yes, sir. Q. What did you say? A. He had the property leased under the same terms he has always had. He continued in 1916 the same as in 1914 and has continued ever since the same way. Q. And did you say anything each particular year, you just let it run along the same way? A. *No, each year he would just rent from year to year.* Q. Well, there was nothing said about it, you just let it go on the same old way? A. Yes, there was always something said. . . . In 1916 he left after

the crop was harvested. He went away from the place. I don't know that he went right exactly just at that particular time; he was backwards and forwards. Nothing was said about leaving that I know of. They came back and wanted to lease the place in '17. Q. He came back and wanted to draw up a lease? A. Yes, sir, this was the one we were talking about. Q. There was nothing said about leaving in 1916, whether he was coming back or not? A. Not that I remember of. Q. In 1917 you say he came back in April? A. No, about the 1st of April. Q. What conversation did you have with him then about the place? A. He had it in 1916 and I said I would give it to him on the same terms and those were the terms agreed upon. I told him we would have it drawn up in writing. He asked for a lease. I went to Mr. Ornbaum and had it drawn up, and took it out to the ranch. He had never moved his things away from there. We read the lease over and he objected to signing it, and neither of us signed it. Then he started in doing the work, harvesting the crop and continued there during 1917. My wife and I were living there all the time. The 1917 crop was sold under the name of C. A. Black & Son, and we divided the money from that crop. I collected the money for the crop and then divided it with Oscar. Q. He went on in 1918 in the same manner? A. Same manner. Q. And then he went on in 1919 in the same manner? A. '19 same manner. Q. You and your wife lived there a portion of that time, did you? A. We left there in the spring of 1919 but I worked there during the summer of '19. Q. He continued there in 1920 in the same manner? A. In 1920 in the same manner, all except the payment. Q. I mean in reference to the farming and the place, they went on just the same as in 1919? A. Oh, yes. Q. And did the same in 1920? A. Yes. Q. 1921? A. Yes, sir. Q. 1922? A. Yes. Q. 1923 A. Yes, sir. Q. And 1924? A. Yes, sir. Q. Continued on, Oscar as he always had? A. As he always had. Q. And you never had any new or any different understanding with him? A. No, it was just always handled the same way from one year to another. Q. You just settled up at the end of every year? A. A true and correct statement of each and every year. Q. Now you mean you rendered him a statement every year? A. Yes, sir. Q. Do you mean

that you rendered a statement to Oscar at the end of each year showing just exactly how much was received and how much was paid out? A. Yes, sir. Q. And also a statement showing how much you had taken in? A. Yes, sir. . . . Q. Now, in 1918 after the crop was taken off, did you say anything to your son about renting the place? A. Nineteen and eighteen. Q. Yes. A. We leased it to him for the same terms. Q. Well, did you talk about it? A. Well, nothing more than we had an agreement that he would stay on the place and lease it under the same terms. Q. Until you sold the place or in case of your death? A. No, no understanding he was to stay there until I sold the place. I just leased it to him from year to year. Q. At the end of the nineteen year did you say anything to him about continuing on the place? A. Except continuing on the place from year to year. Q. What did you say at the end of 1919; what did you say about staying there? A. Just leased it to him the same as we had been. The Court: Q. He is asking you after your crops were harvested and sold in the fall of 1919, did you and your son have any talk about the renewal of the lease for the following year; did you have any talk about it; if so what was the talk? A. Nothing more than we just agreed upon the terms for the next year the same as we had been running on. Mr. Cowan: Q. You told him if he wanted to stay on another year he might stay on the same terms? A. Yes. Q. 1920 did you have any conversation? A. About the same each year. Q. Now in 1922 where did you have any conversation with him? A. I don't know of any particular place. Q. *Did you ever have any with him?* A. *Yes, we have always had an understanding at the end of each year.* Q. *Do you mean to say you talked it over at the end of each year?* A. *Yes, we always had an understanding whether he wanted to stay on the place, I re-leased it to him.* Q. If he wanted it he could have it; if he wanted to move off he could leave it? A. If he wanted to run it again he could. Q. Yes. A. Yes, he could go on with it. Q. You didn't have any talk with him in 1923? A. Yes, we had. Q. Where? A. I think we were over in the prune dipper somewhere. Q. Who was there? A. Oscar and I. Q. Anybody else? A. Nobody as I know of. Q. What did you say to him then? A. We just talked it over and said he

would go ahead with the ranch, lease it on the same terms again.''

Emphasis is put upon the statements frequently made by plaintiff that the agreement ''was made from year to year,'' and ''on the same terms'' as those upon which the premises were leased for the preceding year or years, the interpretation of those statements by counsel for defendant being that plaintiff thus intended to say and, in fact, did say that the lease was from year to year—that is, not for a definite or limited period of time. But the trial court, as its findings indicate, interpreted those statements by the plaintiff by the light of his unqualified statement, repeatedly made, to the effect that, in each year, prior to the expiration of the term then existing, he took up with defendant the matter of a further lease of the property for another year upon the terms upon which defendant then had possession thereof under the lease or leases previously made. We find no reason for doubting the soundness of that interpretation of those statements. The plaintiff repeatedly stated in a positive way that, at the end of each term in every year of the several during which the defendant held the property as the tenant of plaintiff, he would ask the defendant whether he desired to continue with the leasing of the property upon the terms upon which he had always held it from the time he first took possession thereof as a tenant, and that the latter invariably agreed to the proposition and proceeded as under the previous leases. What, therefore, plaintiff intended to say, when making the statement that the lease was ''from year to year and upon the same terms as the other leases were made and carried out (and this was the view of the trial court, as we must construe its findings) was that in every year succeeding the first year of the lease of the premises to him, a new agreement of lease was made upon the same terms, as to rental, as the preceding lease or leases had been made.'' In other words, ''from year to year he made a new agreement upon the terms upon which the previous agreements of lease were made.'' This is a reasonable and just interpretation of the statements referred to and is, as stated, presumptively, in view of the conclusion upon the facts arrived at by the trial court, as indicated by the findings, the interpretation thereof by that court. If, indeed, the interpretation thus

given said statements is not sustainable, or, if, as defendant contends, plaintiff intended thus to say that the tenancy at all times was one "from year to year" in the legal concept of that expression, said statement would then involve purely a legal conclusion and, therefore, wholly lacking in probative quality, and thus there would be left of an evidentiary character before the trial court upon the question at issue the testimony of plaintiff only that he always asked defendant each year whether he desired to continue to hold the property under lease for another year, the irresistible inference from which is, if believed (and, obviously, the trial court believed it), that the lease each year was for a definite and fixed term, limited to one year, and, of course, the testimony of defendant inconsistent therewith or tending to prove that there never was any determinate or definite term agreed upon, but that he took possession and retained it from year to year upon the general understanding between himself and plaintiff that he (defendant) should continue to maintain such possession as a tenant until plaintiff should at or before the expiration of any one year elect to terminate it. Thus the findings as to the nature of the tenancy created are safely grounded on plaintiff's testimony other than the statements referred to. Of course, the testimony of the defendant at variance with that of plaintiff merely created a conflict in the evidence which it was solely the duty of the trial court to resolve and settle.

In their nature, the facts, as they were testified to by plaintiff concerning the hiring or leasing of the premises for the year ending October 31, 1924, are strikingly similar to those in the case of *Johnson* v. *Foreman,* 40 Ill. App. 456. In that case, the original leases were written and each provided for a definite term of one year for each of nine consecutive years. The tenant, after the expiration of the term covering the ninth year, no written lease having been executed for the tenth year, nevertheless remained and continued in possession and occupancy of the demised premises. The plaintiff in said case testified: "Q. What was done when that (the written lease for the ninth year) ran out? A. He continued on another year. Q. Without a written lease? A. Without a written lease. Q. Was any new arrangement made at all? A. None at all, except for the year; he said he would stay another year." The court of

appeal held that the latter part of the testimony of the plaintiff in that case, "he said he would stay another year," effected a lease of the premises for a definite term, to wit, one year. The court said: "When one is a tenant of premises for a year, under either a written or a valid verbal lease, and the tenant and landlord come together at the end of the year, and the tenant says to the landlord that he will stay for another year, and the landlord assents to it and rent is paid at the former rate, that is leasing for one year and does not create a tenancy from year to year. Tenancy from year to year will be created where a tenant holds over after the expiration of a former lease for one or more years and pays rent, nothing being said between the parties, no agreement as to the time he shall hold being made."

The case here, candor will force the admission, is much stronger in the showing of the creation of a tenancy for years than is the case from which the above excerpt is taken, and we agree that the testimony of plaintiff in that case was amply sufficient to show the creation of a tenancy or an estate for a definite and limited time or term.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 10, 1926.