[L. A. No. 14301. In Bank.—March 21, 1935.]

FRANKLIN R. KENNEY, Respondent, v. LOS FELIZ INVESTMENT COMPANY (a Corporation), Appellant.

Chapman & Chapman and Ward Chapman for Appellant.

Newlin & Ashburn and A. W. Ashburn for Respondent.

SHENK, J.—In this action for declaratory and other relief the plaintiff sought an adjudication of the rights and obligations of the parties under a note and trust deed given by the plaintiff's predecessor, C. G. Willis, to the defendant and appellant, Los Feliz Investment Company, evidencing and securing deferred payments of the purchase price of an oil producing property at Santa Fe Springs, especially with reference to the application of payments thereon representing proceeds realized from oil and gas produced on the property. Recovery was also sought of various sums alleged to have been paid under duress and protest.

In June, 1931, the case was first tried resulting in a judgment declaratory of the rights and obligations of the parties as contended for by the plaintiff, together with a money judgment in his favor for $26,702.86, with interest. The judgment was reversed. (*Kenney* v. *Los Feliz Investment Co., Ltd.*, 121 Cal. App. 378 [9 Pac. (2d) 225].) Prior to the retrial the plaintiff filed an amended and supplemental complaint in which he presented the same issues with respect to the construction of the contract and sought the recovery of all alleged duress payments including those paid pending the appeal and before the second trial. The new trial resulted in a judgment following in substance the declaratory relief as adjudicated upon the first trial, and included a money judgment in the plaintiff's favor for all of the payments made under protest, with interest to December 29, 1932, aggregating $68,917.29. The present appeal from that judgment is prosecuted solely by the Los Feliz Investment Company.

The property was sold by the company to Willis for a stated consideration of $1,000,000, $125,000 of which was paid at the time. Concurrently therewith Willis, under date of March 1, 1929, executed and delivered to the company a promissory note for $875,000, payable "in installments of Five Thousand Dollars ($5,000) or more on the 1st day of each and every calendar month beginning on the 1st day of May, 1929", with interest on the unpaid principal at the rate of seven per cent per annum payable monthly. The

note also provided that the maker of the note should not be held personally liable, and that "such principal and interest shall be payable solely and only out of the proceeds that may be derived for 50% of 13–2/3% of the oil and gas that may be produced, saved and sold from the property covered by the trust deed executed to secure the note. . . . Nevertheless, it is understood and agreed that if said minimum payment of Five Thousand Dollars ($5000) per month and interest is not made as and when each installment becomes due, even though 50% of the 13–2/3% of the proceeds of oil do not equal that amount, then this note shall be deemed in default, and the holder thereof shall have all the rights of foreclosure set forth in the trust deed executed as security for this note."

Concurrently with the execution of the foregoing note the parties executed a trust deed to secure the obligations of the note. The pertinent portion of the trust deed is as follows: "It is understood that 50% of 13–2/3% of all oil and gas that may be produced, saved and sold from the above described premises shall be applied on the hereinafter described note, if, as and when produced, saved and sold. For the purpose of carrying out this provision as to the division of proceeds of the sale of oil, it is agreed that all such proceeds shall be paid to the trustee herein, and the trustee shall be authorized and instructed to disburse the same as herein provided."

The controversy between the parties was with reference to the proper application of the funds received by the trustee. The plaintiff insisted that under the terms of the note and trust deed the minimum payments due on the first of each month were the monthly interest and the $5,000 installment of principal and that any excess in the fund to which the plaintiff was entitled should be applied, if necessary and sufficient, to the next and subsequent minimum payments. The company contended that if there was in any one month any excess over the minimum payment of principal and interest next due, then such excess should be credited on the unpaid balance of the obligation. From August, 1929, to February 1, 1931, the trustee received in excess of the minimum payments of principal and interest due during that period the sum of $264,756.54. If this sum were applied on the unpaid balances of principal and interest, as the company insisted, the plaintiff would be required to

make up the minimum interest and principal payments from other sources in the event production fell off to such an extent as to make it necessary, or on failure so to make such payments to suffer default. If such excess were applied as the plaintiff contended, the minimum payments of interest and principal would be safeguarded for many months to come (to and including November 1, 1935), without payment from outside sources even if production stopped. In order to protect himself against a threatened declaration of default the plaintiff, on the company's insistence, made successive payments to satisfy the monthly requirements after application of the excess by the trustee in accordance with the company's theory. The company also insisted that the payments so made by the plaintiff in an effort to protect himself were voluntary payments and in no event could be recovered.

The first trial resulted in findings, conclusions of law and judgment in accordance with the plaintiff's contentions on all points. The court found and concluded that the term "minimum payment" as used in the note, and the phrase "next minimum payments due", under the installment note, meant the interest payment due on the unpaid principal on the first of the following month and the $5,000 payment also due on that date; that the excess could not be applied on interest payments except as they became due monthly; that such excess could not be applied in flat reduction of unpaid principal, and that the plaintiff had made payments to protect himself against default, under duress and protest, and should recover the same.

On the appeal from that judgment the District Court of Appeal agreed with the trial court on two of the three major points, first, that it appeared without question from the written evidence of the contract of the parties that the excess at any one time could not be applied to interest beyond the next ensuing monthly due date. This was true especially since interest was payable only on the unpaid balance of the principal; and on the second point that the payments of the plaintiff to protect himself from a threatened declaration of default were made under duress and recoverable. The determination of the District Court of Appeal on these two points has become the law of the case.

On the third point the District Court of Appeal decided that it could not be said with certainty from the

writings whether it was the intention of the parties that the excess should be applied as a flat deduction of principal or should be applied on future monthly payments of $5,000 as the same became due. This uncertainty was suggested by reason of the terms of the note which provided for monthly payments of $5,000 *or more,* and the reviewing court determined that the trial court had committed prejudicial error in rejecting evidence of the negotiations and conduct of the parties offered by the company for the purpose of disclosing the intention of the parties in this connection. The judgment was accordingly reversed to the end that the trial court might determine from the proffered evidence the intention of the parties in the premises.

On the retrial the court received evidence of the negotiations of the parties leading up to the final execution of the written instruments, which together constituted the contract and the conduct of the parties thereunder, in order that the uncertainty declared by the District Court of Appeal might be resolved. This evidence was in many respects conflicting. In support of the findings made in favor of the plaintiff's theory it appeared that the preliminary offers of the company called for the payment of $5,000 and interest each month, with an additional monthly payment of the excess of the royalties over $5,000 on account of principal. These offers were rejected by Mr. Willis. Counter-proposals were made, resulting in the final draft of the instruments as executed, from which, and from the oral evidence, the court found the intention of the parties to have been as contended by the plaintiff. Again judgment in his favor was duly entered.

On this appeal the company reiterates its contentions made on the former appeal and at the second trial, but its efforts in that behalf are unavailing. On two of the main points the company is foreclosed by the law of the case and on the third the evidence is sufficient to support the findings in the plaintiff's favor. A more extended discussion of the points presented is not necessary.

The judgment is affirmed.

Thompson, J., Seawell, J., Preston, J., Curtis, J., and Waste, C. J., concurred.

Rehearing denied.