[Civ. No. 6675.    Third Dist.    June 4, 1942.]

H. C. NEAD, Respondent, v. SPECIMEN HILL MINING
    COMPANY (a Corporation), Appellant.

Harold E. Haven for Appellant.

Rowan Hardin for Respondent.

THE COURT.—Judgment was rendered for the plaintiff in the sum of $1,198.37, and interest from July 20, 1940, for

merchandise sold and delivered to the defendant, and for the further sum of $975.79, as the value of mining machinery and equipment which were furnished by the plaintiff to J. O. Gillice, a lessee of a mining claim, upon a conditional sale contract, and subsequently converted by the defendant after it had purchased the claim. From that judgment the defendant has appealed.

It is conceded the defendant owes plaintiff $482.37, upon the unpaid portion of the purchase price of the merchandise. The appellant contends that the balance of the judgment is not supported by the evidence because the machinery and equipment which were installed and used in the operation of the mine, under the provisions of section 2601 of the Public Resources Code of California, became fixtures on, and an inseparable part of, the real property, and therefore passed to the defendant as purchaser of the mining claim.

The respondent asserts that the provisions of the code above cited have no application to the facts of this case, for the reason that Mr. Gillice purchased the machinery and equipment on a conditional sale contract, agreeing with the plaintiff that title to the property should not pass until the purchase price was fully paid. The purchase price of the property was never fully satisfied.

John Kojovich became the owner of the Iron Duke Quartz Claim, in Mariposa County, by deed dated June 22, 1925. That claim is incidentally involved in this suit. Mr. Kojovich died testate on March 23, 1936. His will was admitted to probate and Frank Maschio was appointed executor thereof. Pursuant to an order of the probate court, which was procured in said estate, a written lease of the mining claim and an option to purchase it for $9,000, upon payments of specified installments on or before January 27, 1939, was executed to J. O. Gillice on April 27, 1936. He immediately took possession of the claim and purchased from the plaintiff at various times prior to June 30, 1938, on a conditional sale contract, mining machinery and equipment which were installed on the premises and used in operating the mine. Pursuant to their previous agreement, J. O. Gillice signed and delivered to the plaintiff on July 5, 1938, a written statement enumerating the various items of said property which were "delivered to the Iron Duke Mine" and specifying in said document the respective purchase prices thereof. This contract was recorded October 11, 1940, in volume 8 at page 194, of the

Mariposa County Records. It contains the following agreement reserving title to the machinery in the vendor until the purchase price thereof is fully paid:

"The above items including Page 1 are the property of the Nead Machinery Co., title of which shall remain with them until the full amount is paid. The above equipment was delivered to the Iron Duke Mine, Mariposa County."

Mr. Gillice failed to exercise his option to purchase the mine, or to make the payments therefor as specified in the lease and option. March 4, 1939, he assigned the lease and option to purchase the mining claim to Mrs. Alvina F. Bulkley, who was president of the defendant, Specimen Hill Mining Company. The Iron Duke Mining Claim was distributed in the estate of John Kojovich, deceased, to two parties named Runjavac and Saso. They deeded the claim to Mrs. Bulkley, June 29, 1939. She conveyed it to the defendant, Specimen Hill Mining Company, October 13, 1939. The machinery and equipment in question were used in the mining operations of the last-mentioned company. Some of it was disposed of by that company. The defendant, mining company, claims title to the machinery and equipment, under section 2601 of the Public Resources Code, as fixtures and as a part of the mining claim.

This suit was commenced in December, 1940. The complaint was couched in two counts. The first cause was for the balance of the purchase price of merchandise which plaintiff sold to the defendant. The second cause was for damages for conversion of mining machinery appropriated and used by the defendant. The court adopted findings to the effect that all allegations of the complaint are true, and that the statements of the answer in conflict therewith are untrue. Judgment was rendered for the plaintiff as prayed for. From that judgment this appeal was perfected.

■ The judgment and findings are supported by the evidence. The mining claim was leased to J. O. Gillice, April 27, 1936. He took possession of the property and operated the claim for nearly three years. He assigned the lease March 4, 1939, to Alvina F. Bulkley, who afterward became president of the defendant, Specimen Hill Mining Company. During the period of time that Mr. Gillice operated the mine, he purchased from the plaintiff, from time to time, on a conditional sale agreement, machinery and equipment which were installed and used in the Iron Duke Quartz Mine. There is satisfactory evidence to show that when the mining claim

was transferred to Mrs. Bulkley on June 29, 1939, the machinery and equipment in question came into her possession. There is evidence that when she transferred the mining claim on October 13, 1939, to the Specimen Hill Mining Company, of which she was president, the machinery and equipment passed into the possession of the mining corporation. The plaintiff, Mr. H. C. Nead, testified in that regard:

"Q.   When was that machinery placed upon the Specimen Hill Mine?   A.   From about February to June 1938."

During the trial the respective attorneys in this suit signed and filed a written stipulation, dated March 22, 1941, which provides in that regard:

"It is further stipulated that the property described in plaintiff's Exhibit 3 *was delivered to and used or installed upon the Iron Duke Mining Claim,* the Commercial Quartz Claim or the Pedro Placer Mining Claim." (Italics ours.)

The plaintiff, Mr. H. C. Nead, testified repeatedly that the machinery and equipment were sold to Mr. Gillice on a conditional sale agreement. The clear result of that transaction is that the respective parties agreed the machinery and equipment should not become fixtures on the mining claim, and upon the contrary that the title to that property was to remain in the vendor until the purchase price was fully paid. Pursuant to that understanding and agreement, Mr. Gillice signed a written document on July 5, 1938, which is referred to as a conditional sale contract, and delivered it to the plaintiff, in which he itemizes certain machinery and equipment, together with the agreed purchase price thereof, and specifically declares, in accordance with their previous agreement, as hereinbefore quoted, that the title to the property shall remain in the plaintiff until the purchase price is fully paid.

The plaintiff always asserted to the representatives of the defendant corporation, including Mrs. Bulkley, the president, and the attorney, Harold E. Haven, who was the secretary of the company, that the machinery and equipment were sold to Mr. Gillice on a conditional sale contract. In response to a question propounded to Mr. Nead by defendant's attorney, Mr. Haven, he so declared. The following colloquy occurred in that regard:

"Q.   Did you ever tell me that you had that as a basis of your claim on the property?   A.   Yes sir, I certainly did, because as many times as I talked to you about it, I am sure I told you I had this conditional sales contract."

That agreement regarding the title to the machinery and equipment was introduced in evidence and marked Plaintiff's Exhibit 3. At the trial, Mr. Haven, the defendant's attorney, stated in open court, with respect to that exhibit, as follows:

"I will stipulate that the total of the items shown by Plaintiff's Exhibit Three is $1808.49; that the total of the credits for property returned is $328.00, making a net of $1480.48," remaining unpaid.

Mr. L. G. Thompson, who had charge of the mine after the defendant took possession of it, including the machinery and equipment in question, signed a written acknowledgement of possession, on the part of the defendant, of the identical items of machinery and equipment which are mentioned in said exhibit 3, with the exception of a few articles thereof, which were missing. Thompson's statement was received in evidence and marked Exhibit 4. The disposal of one of those missing articles was testified to by Mr. Nead as follows:

"Q. . . . You said you could tell where one of these engines went. Where did you get that information, and where did it go to? A. I got the information from the fellow who got it. It went to the man who bought the little mill that was on the property at the time Mr. Thompson took it over, and started operating. Q. Did you give it to that party? A. No sir. Q. Do you know who did? A. I suppose Mr. Thompson. Anyway —— shall I explain? Q. Yes, you might explain that. A. This party who bought the mill came into our yard. Something was said about the Iron Duke Mine. He said, 'I bought a mill from there, and also got a Dodge engine.' I said 'I am glad to know where the Dodge engine went, because that was mine'."

The foregoing evidence adequately shows that the machinery in question came into the possession of the defendant. The plaintiff demanded return of the property, which was refused. Some of it was apparently sold and disposed of by the defendant. With the exception of a few articles of the property which were repossessed by the plaintiff, of the agreed value of $328, as Mr. Haven stated, none of that property has been restored to plaintiff. On the contrary, it was converted to the use of the defendant, upon its claim that the machinery and equipment were acquired as fixtures and as inseparable parts of the real property. It follows that, unless the defendant acquired title to the machinery and equipment under section 2601 of the Public Resources Code, the plaintiff is entitled to judgment for the return of the

property or to an award for the reasonable value thereof. There is some evidence of an acknowledgment on the part of the attorney for the appellant, who was acting as its secretary, that the defendant did not claim title to the machinery and equipment. There is also evidence of a promise that if plaintiff would procure from Mr. Thompson a certified list of the property which came into the possession of the mining corporation, it would be either returned to the plaintiff or paid for. Mr. Nead testified in that regard:

"Q. Didn't I ask you to find out how much of the equipment was left on the property, and get Mr. Thompson to 'OK' the list, so that I could take it up for you? A. You asked me to get a list for Mr. Thompson to 'OK,' and you would either return or pay for it."

The record contains sufficient evidence of the value of the machinery and equipment converted by the defendant to support the findings and judgment with respect to that cause of action. Mr. Nead, who was perfectly familiar with the property in question and with the market value thereof, testified to that valuation.

In spite of the fact that the machinery and equipment were installed and used on the Iron Duke Mining Claim, which was subsequently purchased by the defendant, we are convinced the record clearly shows that it was not the intention of the plaintiff, or of Mr. Gillice, that title thereto should pass to the vendee until the purchase price was fully paid. On the contrary, it appears that it was the intention of the parties that title to that property was not to pass to Gillice until he had fully paid for the machinery and equipment. At least, in support of the judgment, there is ample evidence to that effect. That agreement in writing was subsequently made between the parties. It was not necessary that such conditional contract should have been made *in writing* at the time of the transfer of the property. That was a conditional sale of personal property. It is sufficient if it was orally agreed to between the parties at the time of the sale. The subsequent written agreement in the present case merely confirmed the previous oral contract to reserve the title to the personal property in the vendor until it was fully paid for. That being true, it follows that the installing and use of the machinery and equipment in the mine did not constitute them as fixtures thereon, or render them an inseparable part of the realty. It was an agreement they should remain as personal property.

■ The passing of title to specific personal property depends upon the intention of the parties to the transaction. (§ 1738, Civ. Code.) In the absence of a written contract, the intention of the parties with respect to the passing of title to personal property should be determined from the declarations, the conduct of the respective parties and the surrounding circumstances. (*Bond Inv. Co.* v. *Blakeley,* 83 Cal. App. 696, 701 [257 Pac. 189].) Certain rules for ascertaining the intention of the parties, applicable to the passing of title to property, are prescribed by section 1739 of the Civil Code. None of those rules appears to apply to the present case. There is nothing in section 1013 of the Civil Code, upon which the appellant relies, in conflict with what we have previously said regarding the right of the parties to a transfer of property to preserve by mutual agreements its character as personal property. That section merely says that:

"When a person affixes *his property* to the land of another, without an agreement permitting him to remove it, the thing affixed . . . belongs to the owner of the land, unless he chooses to require the former to remove it."

■ It is only when a person affixes "his property" to the land of another, that he may not remove it except as provided in that section. In the present case, if by agreement the plaintiff and Gillice agreed that the former should reserve the title to the machinery until the latter had fully paid for it, and the purchase price was not fully paid, then Mr. Gillice did not own the machinery and equipment, and therefore he did not "affix *his* property" to the mine when it was installed therein for the purpose of operating the claim.

■ It is a well-recognized principle of law that, in spite of the existence of a statute which ordinarily recognizes personal property which is used on or attached to real property, as fixtures, the owner or one who has an interest in the realty, such as a lessee thereof, may agree with a vendor of machinery or personal property which is subsequently used on or attached to the realty, that it shall retain its character as personal property, and that the title thereto shall remain in the seller until its purchase price has been fully paid. That agreement will prevail against a subsequent purchaser of the real property with actual or constructive notice of the vendor's title to the personal property. (*Teater* v. *Good Hope Dev. Corp.,* 14 Cal. (2d) 196, 207 [93 P. (2d) 112]; *Dauch* v. *Ginsburg,* 214 Cal. 540, 544 [6 P. (2d) 952];

*P. J. Freiermuth Co. v. Faustino,* 120 Cal. App. 136 [7 P. (2d) 370] ; *Oroville-Wyandotte Irr. Dist.* v. *Ford,* 47 Cal. App. (2d) 531 [118 P. (2d) 340] ; 12 Cal. Jur. 566, §§ 6 and 7; 88 A. L. R. 1321, note; 13 A. L. R. 454, note.)

In the present case there is adequate evidence that the defendant acquired title to the mining claim with full knowledge that the plaintiff, by agreement with Mr. Gillice, the lessee, sold to him the machinery and equipment reserving title in the vendor until the purchase price was fully paid. Mr. Nead testified that he talked with Mrs. Bulkley, the president of the defendant corporation, and with Mr. Thompson, the overseer of defendant's mine, regarding that fact in the spring of 1939, before the defendant bought the mining claim. He testified in that regard :

"It was after Mr. Gillice's death that I got in touch with Mrs. Bulkley, and told her I was going to remove our equipment from the mine, and she asked me not to do that; that they would sure lease the property and operate it, and this equipment being on the property, would be an advantage to sell it, and I would also get my money for the equipment. I talked to Mrs. Bulkley several different times between along in the spring of 1939, and up until the time that Mr. Thompson took charge of the property. Q. Did you ever talk with Mr. Thompson about it? A. Yes sir, I notified him I think the first time I was over there, after he had taken charge, of what property was ours. And then later on I got the 'OK' of Mr. Thompson of what property they could use."

The defendant was not incorporated until June 8, 1939. The mining claim was not conveyed to Mrs. Bulkley until June 29, 1939. It was not conveyed to the Specimen Hill Mining Company until October 13, 1939. The machinery and equipment were all placed on the mining property on or before the end of June, 1939. There appears to be no doubt that the officers of the defendant corporation had actual knowledge of the fact that plaintiff claimed title to the personal property by virtue of a conditional sale contract with J. O. Gillice long before the mining claim was conveyed to the company. The defendant is therefore bound by that agreement.

In the case of *Freiermuth Co.* v. *Faustino, supra,* it was held that a purchaser of land, who, prior to acquiring title thereto, had knowledge of a conditional sale agreement between the vendor and the purchaser of well casing and a

pumping unit which were installed on the real property, by the terms of which the seller retained title to the personal property until the purchase price was fully paid, was bound by that agreement although the conditional sale contract was not recorded. In 12 Cal. Jur. 568, section 7, it is said with respect to what constitutes notice to a subsequent purchaser of real property of title to personal property which has been attached to the realty:

"To constitute one a purchaser with notice within the rule, it is not necessary that he have notice of the conditional contract, but only that he have notice that the character of personalty might attach to the property. For instance, if a tenant is in possession of the premises, information that the property in question has been installed by the tenant is sufficient notice to put him on inquiry within the rule, notwithstanding the tenant may state that he has paid for it in full."

In 22 American Jurisprudence, page 729, sections 17 and 18, it is said:

"Such an agreement may be implied from circumstances or from the fact that the property is sold under a conditional sale contract. . . . A purchaser or subsequent mortgagee of land with notice of an agreement that an article attached to the realty shall remain personal property takes, subject to such agreement, and cannot claim the article annexed."

We therefore hold that the mining machinery and equipment which were involved in the second count of the complaint, were purchased from the plaintiff on a conditional sale contract which reserved the title thereto in the vendor, and installed on the mining claim with that understanding between the parties; that the defendant subsequently purchased the real property with actual knowledge of that fact, and that it is therefore liable for conversion of the personal property.

This disposes of the only question raised on appeal, as indicated by the statement which is printed on the flyleaf of its opening brief. The first cause of action is based on other merchandise which was furnished and delivered to the defendant. With respect to that count, judgment was rendered for the plaintiff in the sum of $1,198.37. The appellant concedes that there is owing and unpaid on that account the sum of $482.37. The balance of that judgment is supported by the evidence. In support of the first cause of action, Mr. Nead testified as follows:

"Q. Then as a summary Mr. Nead, as I get your testimony,

the value of the property which you sold to the Specimen Gold Hill Mining Company, which has not been paid for, according to this record, if I get it correctly, totals $1198.37 . . . together with the rental? A. Yes sir, $1198.37.''

The record contains ample evidence of the rental value of that property.

The judgment is affirmed.