[Civ. No. 13679. First Dist., Div. One. Sept. 21, 1948.]

THOMAS H. CAMP, as Trustee, etc., Respondent, v.
PETER MATICH, Appellant.

Bohnett, Hill, Cottrell & Bohnett and Eugene K. Kennedy for Appellant.

Harvey C. Miller and Richard W. Morton for Respondent.

WARD, J.—This is an appeal by defendant from the judgment and from an order denying a new trial in an action for unlawful detainer, in which plaintiff was awarded possession of the premises in dispute and defendant was ordered to pay damages amounting to $1,351.36, plus costs, and permanently enjoined from removing or altering certain buildings and premises. The notice of appeal specifies that it is taken from "the whole thereof" but appellant's opening brief specifies: "The appeal is taken to a portion of this amount, namely, Six Hundred Fifty-One and 36/100 Dollars ($651.36), which amount was ordered as damages for the removal of certain property from the premises of the respondent, and also that portion of the judgment which permanently restrained the defendant from entering, removing and tearing down any of the buildings on the premises of the plaintiff."

Appellant does not call attention to any claimed error in ruling on evidence; rather, it is the sufficiency of the evidence to sustain the findings and the legal conclusions drawn therefrom that is presented upon appeal.

The court found that defendant "is in possession" under the terms of an oral lease which commenced January 1, 1946; that the tenancy expired on June 30, 1946; that the right to remove fixtures terminated on the last mentioned date, but that defendant held over contrary to demands to surrender possession "and is now holding the same"; that the value of the premises since June 30, 1946, is the sum of $100 per month; that defendant erected a corrugated iron building at the eastern end of the original building and installed redwood walls or siding in the original buildings; that the erected and affixed portions by reason of the manner of construction had become an integral part of the real property and could not be removed without doing substantial injury to plaintiff's premises; that after the tenancy of the premises had terminated defendant tore down and removed the building erected by him and has threatened to remove and carry away the redwood siding or walls installed in the original building; that the damage by reason of such removal would not be compensable in money; that the additional installations and attached rooms were not built or installed with any understanding or agreement that they might be removed. Conclusions of law follow that plaintiff is entitled to a judgment of unlawful detainer, and that a writ of restitution should be issued thereon; that he is entitled to an injunction permanently restraining and enjoining defendant from tearing down or removing the "redwood walls or siding" now in the building, and to a judgment for damages.

In substantiation of the findings, the evidence shows that the John Cownie Trust is the owner of the designated real property situated in the city of San Jose, California, and that it has been such since the latter part of March, 1946. L. D. Bohnett, defendant's counsel, testified that the property "was formerly owned by the Thermotite Construction Company, in which I was somewhat interested, and my brother was running it. They wanted to borrow money. I had a client who was willing to lend them the money on this property if I would sign the note. I signed the note, and when the Corporation went flat, I had to take the property over to protect myself." In 1936, defendant, doing business as the San Jose Concrete Company, went into possession of the property "on a month-to-month basis." Defendant continued in possession when Bohnett sold the property to E. J. Rimple. The exact date of the transfer does not appear in the record. It apparently took place early in 1945, since Rimple testified that "After I owned

the property several months,'' defendant stated that he would pay six months' rent at once. The date of this statement was fixed as around July of 1945. John Cownie of the Cownie Trust, subsequent purchaser of the property, testified that the first time he talked with defendant was a month or six weeks after its purchase, at which time ''I told Mr. Matich that I had purchased the property for this trust company, and it would be for rent, and asked him if he would be interested in renting the property. . . . He said that his lease was out on July 1st, and that promptly after Mr. Rimple had sold the property, that he had advised him, Mr. Matich, that the property had been sold and he would be not in position to release it to him. . . . I then asked him if he would be interested, and he said that as soon as he had received this notice from Mr. Rimple, he had gone, and I'm not positive whether he said he had rented or purchased the lot next to me, but that he could for the present, for some time, use the two of them, and I again asked him if he would be interested in keeping my lot, and he said he wouldn't, so I told him I'd take it under consideration and advise him, which I did a little later, as to what the rental would be . . . a week or ten days after our conversation . . . I told him that I had given the matter consideration, and I named him a price, that I would rent it to him for one or two years at $150.00 a month, and he replied that at that price it was more than he was paying for the other lot, and he wouldn't be interested, and that's all the conversation I had with him about the rental.''

A witness who subsequently leased the property from plaintiff at $150 a month testified that he had visited the property around May 10, 1946, and also during the trial of the case. He further testified that ''starting from the rear of the property, the northeast side, there was one wooden shed back there, and in front of that there was a frame construction with half of it roofed, and the rest of it open; and to the southeast of the property there was an open corrugated iron shed. I don't know what the dimensions were, they're 23 x 18, something like that, approximately. . . . then there was a main shed, I think 40 x 60, in the front, corrugated iron. Then there was these small sheds that were adjoining, and they were wooden frame, corrugated top, and the next section was corrugated iron building 28 x 28, I believe, and it was about 18 feet high. It had sliding doors.'' He also testified that this 28 x 28 building was removed in its entirety, and he described the interior of the corrugated iron building 40 x 60

and the shed remaining on the property as having "tongue and groove lining." His testimony was that the removed 28 x 28 building "was fastened to the building which now remains, and it was in two heights . . . a square frame building covered with corrugated iron." This corresponds in substance with defendant's testimony. Another witness, a licensed contractor, estimated the cost of the removed frame building covered with corrugated sheet iron to be $651.36.

Defendant was called under section 2055, Code of Civil Procedure, and testified that on two occasions he paid Mr. Rimple $600 for six months' rent. He testified that in May or July of 1945 he asked Rimple if it would be of help to him if he paid rental for six months in advance. "Mr. Rimple, he gave me answer, he says, 'This is going from month to month.' I said, 'I understand that.' Like he say, 'If I want to order you out, I could order you out and give you thirty days' notice,' which was the understanding between us." However, in December of 1945 he again paid Rimple $600 in payment of rental through June 30, 1946.

Defendant's testimony is to the effect that he went to his original landlord, Mr. Bohnett, and received his "OK" on the installations and it was understood that if the place should be sold defendant could move his "material out," but Bohnett testified: "Well, there was some discussion about lease, and I did prepare a lease for one year, but it was never signed, and we went, just went on a month-to-month basis at the beginning. Q. Do you recall a conversation with Mr. Matich concerning the installation of the redwood tongue and grooving? A. I recall a conversation, my memory is that it was over the telephone, I may be wrong, but I recall that Mr. Matich asked me if I had any objection to his building a steam room in that shed. I told him that I had no objection, and dismissed it from my mind. Now, whether there was more to the conversation or not, I can't recall. There may very well have been, but my attitude, I know this, that if he had asked me, if he did ask me—— Q. Well, I'll object to what you would have done if he would have asked you, Mr. Bohnett. You don't now recall any conversation whereby you told him he could remove that building and things when he moved? A. No, I've told you all that I recall. Q. All that you recall? A. The reason, as I've stated, I paid little attention to what happened there, as long as I got enough rent to carry it."

The only witness called by defendant was Mr. Rimple who testified that defendant was his tenant on a month-to-month

basis during all the time that he owned the property, and that after he "owned the property several months, he asked me if I would care to accept more than one month's payment, that he'd be glad to help me out. He knew that I was under expense building other buildings on other property, and he volunteered to pay me more than the month's rent. . . . there was no conversation as to changing the terms."

A consideration of the elements present in a leasehold for six months and of those found in a periodic tenancy is appropriate in determining the problem presented on this appeal. "Though not expressly mentioned in the Code, *periodic tenancies* are recognized by our cases as a form of tenancy at will. They are created by the parties to continue for successive periods of the same length, unless sooner terminated by notice at the end of one such period. Examples are tenancies from year to year and month to month. An original tenancy at will under an invalid lease, or a lease with an indefinite term, may be construed as a tenancy from year to year or month to month upon payment of rent at such periods." (Witkin, Summary of California Law, vol. 1, 573.) Tiffany points out that this expression covers all tenancies "which are in their nature such as will endure for a certain period, and will continue for subsequent successive periods of the same length, unless terminated by due notice, at the end either of the first period or of one of the successive periods." (1 Tiffany, Landlord and Tenant, p. 119.) The authorities agree that in the absence of express agreement, the reservation and payment of rent at stated periods is "the principal criterion to determine the duration of the successive terms of a periodic tenancy." (Jones, Landlord and Tenant, § 215, p. 253.) Jones adds (p. 254) that "Where no time is mentioned, and no annual rent reserved in a letting, the character of the letting as to time will be controlled by the intervals between the rent payment; monthly or weekly payments implying monthly or weekly tenancies."

The most important difference between a periodic tenancy and a tenancy for a fixed term—such as six months—is that the latter terminates at the end of such term, without any requirement of notice as in the former. (*Ryland* v. *Applebaum*, 70 Cal.App. 268 [233 P. 356] ; *Black* v. *Black*, 77 Cal. App. 82 [246 P. 90].) In order to create an estate for a definite period, the duration must be capable of exact computation when it becomes possessory, otherwise no such estate

is created. (Restatement of the Law, Property, § 19, comments a and b.)

In the present appeal, when all of the evidence is considered, particularly defendant's conversation with Rimple, and the fact that six months' rental had twice been paid in advance to cover the last year of the occupancy, a reasonable inference may be drawn that defendant held the premises by virtue of a six months' oral lease, and that his right to possession terminated on June 30, 1946. This conclusion to be sound in law and in fact must be based upon the assumption that the additions and improvements to the property did not consist merely of trade fixtures, and that a notice was not necessary to terminate an oral lease. These points will be given further consideration.

The intention of the parties is controlling in determining whether an affixed article is to be considered as realty, or personalty which may be removed without injury to the premises. Section 1019, Civil Code, provides: ''A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises.'' In this case in addition to the evidence introduced the court viewed the premises. Under these circumstances the findings on the issue pertaining to fixtures may not be disturbed by an appellate court unless there was an agreement by the parties to the contrary.

A tenant may agree with his landlord that the former may remove fixtures at any time. (12 Cal.Jur. 580.)

Defendant calls attention to his own testimony that there was an understanding reached with Bohnett that the improvements could be removed when he ceased to be in possession of the property. Mr. Bohnett testified that he had no independent recollection of the conversation. That testimony did not assist defendant. The court had a right to consider the importance of such a question, and the fact that if such an agreement had been made with the original landlord he probably would have remembered it. The defendant as a witness must be judged upon the theory that the court weighed the probability of the making of such an agreement and that the manner in which defendant testified turned the scales against him on this question. (Code Civ. Proc., § 1847.)

■ ˙Defendant contends that his possession and occupation of the property constitutes notice of his agreement with Bohnett that he might remove the fixtures at any time, so that plaintiff—admittedly a bona fide purchaser for value—is bound by said agreement.

Plaintiff successfully distinguishes the cases cited by defendant. *Follette* v. *Pacific L. & P. Corp.*, 189 Cal. 193 [208 P. 295, 23 A.L.R. 965], involves the claim of one asserting the right to an easement as against a subsequent purchaser. *Hunter* v. *Watson*, 12 Cal. 363 [73 Am.Dec. 543]; *Pell* v. *McElroy*, 36 Cal. 268 and *J. R. Garrett Co.* v. *States*, 3 Cal.2d 379 [44 P.2d 538], involve disputes between an "owner" in possession and a subsequent purchaser. *Scheerer* v. *Cuddy*, 85 Cal. 270 [24 P. 713] and *Beverly Hills Nat. Bank* v. *Seres*, 76 Cal.App.2d 255 [172 P.2d 894], involve the claim of a tenant as against a subsequent purchaser.

Both parties cite *Oroville-Wyandotte Irr. Dist.* v. *Ford*, 47 Cal.App.2d 531 [118 P.2d 340], holding that an agreement concerning fixtures is only binding on one having notice, but that such notice is provided by the recordation of the contract to convey in which the agreement was set forth. In the present case the lease was oral. Plaintiff also cites *Nead* v. *Specimen Hill Min. Co.*, 52 Cal.App.2d 475 [126 P.2d 450], dealing with the effect of the knowledge of a purchaser of a mining claim regarding a conditional sales agreement under which the seller retained title to the mining machinery, and *Trabue Pittman Corp.* v. *County of Los Angeles*, 29 Cal.2d 385 [175 P.2d 512], wherein the court stated at page 397: "It is well settled, however, that such contract . . . [as here discussed], is not effective against those not bound by the agreement; for example, innocent third persons."

If the mere possession by a tenant of real property is notice to a purchaser that certain articles, as a shed or house attached to leased property so as to make one continuous structure, are in fact personal property without any further circumstances of a nature reasonably calculated to put the purchaser on notice of an agreement to that effect between the tenant and a former landlord, there would be no way to protect the purchaser. ■ In the present case there was evidence that the attached and additional property had become an integral part of the premises as they existed when the first oral lease was made, and evidence from which a reasonable inference may be drawn that there was no agree-

ment between defendant and his previous landlord as to the removal of the fixtures.

The vital question on this appeal is whether there is substantial evidence to support the findings. In his discussion of the evidence dealing with the nature of the lease, defendant overlooks the fact that, ''Because of the presumptions in favor of the verdict and findings and judgment, the appellate court when reviewing the evidence in support of a verdict or finding, or, in the absence thereof, in support of the judgment, must take into consideration all the evidence rather than certain disconnected portions thereof. It must·accept as true all evidence tending to establish the correctness of the finding or verdict, and it must consider it in the most favorable aspect toward the prevailing party, and give to him the benefit of every inference that can reasonably be drawn in support of his claim. A mere doubt as to whether a finding is justified by the evidence will not authorize the appellate court to set aside the finding.'' (2 Cal.Jur. 879-880; see, also, *English* v. *Olympic Auditorium, Inc.,* 217 Cal. 631 [20 P.2d 946, 87 A.L.R. 1281]; *Kenney* v. *Los Feliz Investment Co.,* 2 Cal.2d 647 [43 P.2d 255]; *Givens* v. *Johnson,* 73 Cal.App.2d 139 [166 P.2d 67]; *Peterson* v. *Peterson,* 74 Cal.App.2d 312 [168 P.2d 474].)

The appeal from the order denying defendant's motion for a new trial is not appealable and hence is dismissed. The judgment as appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.